**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| PAUL MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHELLE DVORSCAK, as-of-yet | ) |
| UNKNOWN EMPLOYEES OF LAKE | ) |
| COUNTY, LAKE COUNTY, LAKE | ) NO. 2:24-cv-266 |
| COUNTY SHERIFF'S DEPARTMENT, | ) |
| and LAKE COUNTY FARM BUREAU | ) |
| CO-OPERATIVE ASSOCIATION, INC. | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Defendant Lake County Farm Bureau Co-Operative seeks summary judgment on

the claim of malicious prosecution brought against them by Paul Marshall. [DE 54.] For

the reasons stated below, the motion will be granted, and the Farm Bureau will be

dismissed as a party to this litigation.

## Background

Paul Marshall owns and operates Midnight Blue, a towing company in Lake

County, Indiana. [DE 61, ¶ 1.] Marshall also has been an active member of the area's

farming community for decades and owns livestock himself. *Id.* at ¶¶ 3-4. Marshall

states in his briefing that the Lake County Farm Bureau has a property adjacent to

Marshall's property. [DE 60, 8.]

On October 11, 2019, Caleb Oxendale, a Lake County Farm Bureau employee,

filed a complaint with the Indiana Board of Animal Health, reporting that he observed

1

Marshall dragging a calf on its stomach behind a four-wheeler as well as kicking it. (For ease of reference I will refer to this as "the Incident"). [DE 60-8, ¶ 5.] Oxendale also submitted a video of the alleged conduct taken from across the street, and subsequently an additional witness, Robert Nelson (another Farm Bureau employee), submitted two more videos of the Incident from a similar angle. *Id.* at ¶ 6; *see also* DE 60, Exs. E, F, G.

On October 29, 2019, Detective Sergeant Michelle Dvorscak of the Lake County Sherriff's Department interviewed both Oxendale and Nelson about the Incident. [DE 60-8, ¶¶ 8-9.] About five months later, Detective Dvorscak executed a probable cause affidavit in support of criminal charges against Marshall for alleged animal abuse. [DE 60-8, ¶ 1.] It is unclear from the record what caused the delay. In any event, the affidavit detailed Dvorscak's qualifications and summarized the investigation, including a description of the video evidence and the witness interviews. *Id.*; DE 60-1. On March 25, 2020, the State of Indiana formally charged Marshall with two counts of Class A misdemeanor animal cruelty in the Lake Superior Court County Division after the prosecution was approved by a deputy prosecuting attorney. [DE 60-8, ¶ 2.] A Lake County Superior Court judge found probable cause and issued a warrant for Marshall's arrest. [DE 55-3.] The State later dismissed the case. [DE 41, ¶ 32; DE 55, 3.]

### Procedural History

On August 1, 2024, Marshall initiated this action against Lake County, the Lake County Sheriff's Department, the Farm Bureau, the investigating detective, and various unknown employees of Lake County alleging violations of his constitutional rights as well as various tort claims arising from the investigation and prosecution of Marshall.

Marshall maintains that his actions during the Incident were consistent with customary and necessary methods to train "headstrong" calves, that the defendants have a personal bias against him, and that the investigation, prosecution, and the accompanying rumors have caused him reputational and economic harm, including the loss of contracts for his towing business. [DE 60-3.]

On February 19, 2025, the Farm Bureau filed a motion for judgment on the pleadings. [DE 27.] In response, Marshall moved to amend his complaint. [DE 31.] I granted the Farm Bureau's motion for judgment on the pleadings in part and granted Marshall's motion to amend in part, dismissing eight of the eleven claims against the Farm Bureau and permitting Marshall to amend his complaint as to his malicious prosecution, respondeat superior, and tortious interference claims against the Farm Bureau. [DE 35, 36, 37.] These state law claims against the Farm Bureau are all supplemental claims for which this Court, which has spent considerable time on this case, maintains jurisdiction. 28 U.S.C.A. § 1367; *RWJ Management Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). The Farm Bureau has now moved for summary judgment on the remaining claims. [DE 54.]

I note that the Farm Bureau moved for summary judgment before discovery was completed, and that, as of the writing of this opinion, the parties have still not completed discovery. In fact, the parties have moved to extend the discovery deadline three times in this case, informing the Court in their latest motion to extend that the depositions of five witnesses have still not occurred, including former employees of the

Farm Bureau, state veterinarians, and a former police officer with the Lake County Sherrif's Department. [DE 71.]

Despite this, Marshall has not moved under Federal Rule of Civil Procedure 56(d) for the Court to deny or defer consideration of the motion for summary judgment pending further discovery. To the contrary, Marshall repeatedly argues in the briefing that he has sufficient evidence to survive the motion. Marshall is represented by counsel and may litigate the case as he sees fit. For my part, I must decide the motion on the record currently before me. *Garcia v. Huckleberry*, 2015 WL 332764, at *2 (S.D. Ind. Jan. 23, 2015) (granting summary judgment to defendant in case where plaintiff lacked key evidence but did not move pursuant to Rule 56(d) for additional discovery nor "made the required showing under Rule 56(d)."); *Baker v. C.R. Bard, Inc.*, 2020 WL 1304594, at *1 (N.D. Ill. Mar. 19, 2020) (granting summary judgment to defendant despite discovery not being completed where the plaintiff "did not move under Civil Rule 56(d) to defer consideration of Bard's summary judgment motion"); *Holmes v. DeJoy*, 2021 WL 9277596, at *2 n.3 (N.D. Ill. Jan. 14, 2021) (granting summary judgment to defendant where defendant did "not argue pursuant to Rule 56(d) that he needs additional discovery").

## Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could [find] for the nonmoving party." *Anderson*

4

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

## Discussion

This case is not about re-litigating whether Marshall is guilty of animal abuse. Instead, the case is about the actions of the defendants (and for purposes of the present motion, the Farm Bureau specifically) which led to the criminal investigation and prosecution of Marshall. The Farm Bureau has moved for summary judgment on the three remaining claims against it: malicious prosecution, tortious interference with a business relationship, and respondeat superior. I will address each of those claims in turn.

### I.    Malicious Prosecution

"Under Indiana Law, 'the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (quoting *Golden Years Homestead, Inc. v. Buckland,* 557 F.3d 457, 462 (7th Cir.2009)).

This claim against the Farm Bureau fails because the undisputed facts show that Caleb Oxendale and Robert Nelson were not the proximate cause of the prosecution. The standard for malicious prosecution is high, and that is especially so when it is

brought against the witnesses who reported the alleged crime and cooperated with the police investigation. There are a few reasons for this, one of which is that witnesses generally do not decide to prosecute; rather, as happened here, they generally report the conduct to the proper authorities who choose to prosecute the case or not based on their investigation. *See Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996) ("[N]one of the Big R defendants instituted or caused to be instituted a prosecution against Conwell. The prosecution was instituted by the prosecutor who made an independent determination of whether to pursue criminal charges after reviewing all of the information obtained by the Sheriff's Department's independent investigation.").

Multiple Indiana courts have granted summary judgment to witnesses who report potential criminal conduct or cooperate with police investigations into such conduct. For example, in *Bah v. Mac's Convenience Stores*, the plaintiff was a store manager suspected of theft by her employer, who reported its suspicions to the police. 37 N.E.3d 539 (Ind. Ct. App. 2015). The police and the local prosecutor's office investigated, which involved interviewing Bah's supervisor, and subsequently the prosecutor chose to charge Bah with theft. *Id.* Bah was found not guilty and sued her employer for malicious prosecution. *Id.* The Indiana Court of Appeals affirmed summary judgment in favor of the employer, finding that "Appellees did not institute or cause to be instituted the criminal action against Bah; the prosecutor did." *Id.* at 547.

Similarly, in *Ali v. Alliance Home Health Care, LLC*, a home healthcare worker was charged with theft based in part on information provided to the police by the healthcare worker's employer. 53 N.E.3d 420 (Ind. Ct. App. 2016). Following her acquittal, the

healthcare worker sued her employer for malicious prosecution. *Id.* The Indiana Court of Appeals affirmed summary judgment for the defendant, stating that "in short, the prosecutor, not Appellees, initiated the action based on IMPD's investigation." *Id.* at 432.

There are, of course, instances where an individual who reports conduct to the police can be held liable for malicious prosecution. But those instances involve situations where the witness knowingly provides false testimony to the authorities in an effort to have bogus charges brought. Such was the case in *Hall v. Shaw*, 147 N.E.3d 394, 404 (Ind. Ct. App. 2020) where the court found (albeit at the pleading stage) that an allegation that a witness provided "false testimony to try and incriminate" the plaintiff would be "sufficient to allow a finding that Defendants were the proximate and efficient cause" of the prosecution. *Id.* (Internal quotation marks omitted). *See also Chalfant v. Lods*, 994 N.E.2d 740 (Ind. Ct. App. 2013) (finding that, where a charge of battery was based on allegedly false allegations for which the criminal defendant was acquitted, summary judgment in a malicious prosecution case against the individual who reported the battery was inappropriate).

In this case, Caleb Oxendale and Robert Nelson, Farm Bureau employees who worked at a property adjacent to Marshall's, recorded a video of the Incident and sent it to the authorities, as well as spoke to the investigating detective about the Incident. Based on the report, the Lake County Sheriff's Department investigated, and Detective Dvorscak signed a sworn probable cause affidavit. A prosecutor then reviewed the case and approved it for prosecution, and a Lake County Superior Court magistrate judge

signed the arrest warrant. Like *Bah* and *Ali*, the investigation and the decision to prosecute were intervening events that constituted the proximate cause for Marshall's prosecution.

Moreover, Marshall's case does not fall into the category of cases where a defendant knowingly made a false report to the authorities to falsely incriminate someone. First, Marshall makes no argument that the multiple videos Oxendale and Nelson submitted to the authorities were doctored or in any way false. And while Marshall disputes the Farm Bureau's characterization of Oxendale and Nelson's interviews with the detective, he does not argue that they explained the Incident falsely, far from it. Marshall instead responded that "[w]hile their statements *may align with the visual data in the video*, Plaintiff disputes the legal and factual *conclusions* drawn by these witnesses." [DE 60-8, ¶ 8 (emphasis added).] As Plaintiff has not submitted evidence sufficient to show that Oxendale or Nelson reported the incident falsely to incriminate Marshall, and the undisputed evidence shows that the police department conducted its own investigation, the deputy prosecuting attorney approved the prosecution, and the state court found probable cause for a warrant, Oxendale and Nelson cannot be found to be the cause of the prosecution under Indiana law.

## II.    Tortious Interference

Marshall must establish six elements for his claim that the Farm Bureau tortiously interfered with his business relationships. He must show (1) the existence of a valid business relationship; (2) the Farm Bureau's knowledge of the existence of the relationship; (3) the Farm Bureau's intentional interference with that relationship; (4)

the absence of justification; (5) damages resulting from the defendant's wrongful interference with the relationship; and (6) that the Farm Bureau acted illegally in achieving the interference. *Columbus Med. Servs. Org., LLC v. Liberty Health Corp.*, 911 N.E.2d 85, 94 (Ind. Ct. App. 2009). Marshall has failed to present evidence satisfying a number of these elements.

First, Marshall has not presented evidence that the interference with any business relationship was intentional. Marshall claims that the allegations of animal abuse harmed his towing business. While that may be so, he has not presented evidence that Oxendale and Nelson's *intent* in reporting the Incident or cooperating with the police investigation was to interfere with Marshall's relationships in his unrelated towing business.

Second, Marshall has not shown an absence of justification. Whether a defendant had a justification to interfere with a business relationship turns on seven factors: (1) the nature of the defendant's conduct; (2) the defendant's motive; (3) the interests of the plaintiff with which the defendant's conduct interferes; (4) the interests the defendant seeks to advance; (5) the social interests in protecting the defendant's freedom of action and the plaintiff's contractual interests; (6) the proximity or remoteness of the defendant's conduct to the interference; and (7) the relations between the parties. *Diamond Quality, Inc. v. Dana Light Axle Prods., LLC*, 256 N.E.3d 529, 533 (Ind. 2025). Far from meeting Marshall's burden to establish the *absence* of justification, the record instead leans far in the opposite direction. I will discuss some of the key elements below to illustrate this.

9

With regard to the first element, the nature of the defendant's conduct was contacting the authorities about suspected animal abuse and participating in the police investigation. As Marshall admits, the "reporting of suspected crimes to law enforcement is a protected activity." [DE 60, 9.] While Marshall alleges that the Farm Bureau employees also engaged in a "whisper campaign" among community members, the evidence Marshall has supplied to support this is his own affidavit, which states that "Oxendale told other customers of the Co-Op about my alleged wrongful conduct causing damage to my reputation, business, and overall well-being." [DE 60-3] This vague statement in the plaintiff's own affidavit does not move the needle much on this factor, which leans in favor of the Farm Bureau.

With regard to the defendant's motives and interests, Marshall alleges that the Farm Bureau's conduct "was motivated by personal animus rather than a good-faith concern for animal welfare." [DE 60, 9.] Marshall claims that the "record contains significant evidence that the Co-Op's actions were born of personal animus." *Id.* at 7. Yet, somewhat amazingly, Marshall's brief does not cite a single piece of evidence in support of this important factual assertion. [DE 60, 7.] Indeed, Marshall states four times in his response brief that the actions of the Farm Bureau employees were motivated by "personal animus" but never backs up those statements with a citation. What the record leaves me with, then, is the suggestion that Oxendale and Nelson reported the suspected animal abuse because they were concerned for the well-being of the animals, making the second and fourth factors lean in favor of the Farm Bureau. Multiple

elements lean strongly in favor of justification, and in his three-sentence argument on this element, Marshall has not presented sufficient evidence to the contrary.

Third, Marshall has not presented evidence that shows, even viewed in a light most favorable to him, that Oxendale and Nelson acted illegally in achieving the interference. Submitting a complaint to the proper authorities and participating in a police investigation are not illegal activities. Marshall argues that they acted illegally by "reporting mistruths and material misrepresentations" that were "providing skewed interpretations of standard agricultural practices and omitting supplemental evidence that would have cleared Marshall[.]" [DE 60, 10.] Marshall has not presented evidence that it is illegal for someone to report conduct to the police that they believe is animal abuse. Marshall further does not explain what "supplemental evidence" the Farm Bureau omitted that would have "cleared" Marshall of any wrongdoing. In fact, Marshall has provided no citations to the evidence nor to caselaw in his subsection entitled "The Defendant Acted Illegally." *Id.*

A failure to establish any one of these elements would be fatal to Marshall's tortious interference claim. *Columbus*, 911 N.E.2d at 94. As Marshall has failed to present evidence to satisfy three of the elements, summary judgment must be granted to the Farm Bureau on this count.

### III.    Respondeat Superior

Let's turn to Marshall's respondeat superior claim. As I am granting summary judgment on both the malicious prosecution and tortious interference claims, there is no remaining basis for any vicarious liability for the Farm Bureau. Thus, summary

judgment must also be granted to the Farm Bureau on the respondeat superior claim. *Winston v. Dart*, 2021 WL 3633919, at * 16 (N.D. Ill. Aug. 17, 2021) ("Without a viable underlying tort claim, the plaintiffs' respondeat superior 'claim' cannot stand alone.").

### Conclusion

Based on the undisputed material evidence, the Farm Bureau is entitled to judgment as a matter of law on all counts. The Farm Bureau's motion for summary judgment [DE 54] is **GRANTED.** The Farm Bureau is hereby dismissed as a party in this case.

**SO ORDERED.**

ENTERED: July 24, 2026.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT